1

2

3

4

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRILL R. HERBERT, | Case No. 1:07-cv-01016 TAG |
| Petitioner, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM |
| v. | ADMINISTRATIVE DECISION |
| MICHAEL J. ASTRUE, | ORDER DIRECTING CLERK OF COURT |
| Commissioner of Social Security, | TO ENTER JUDGMENT FOR PLAINTIFF AND AGAINST DEFENDANT |
| Respondent. | |

Plaintiff Sherrill R. Herbert ("Plaintiff" or "Claimant") seeks judicial review of an administrative decision denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq. Pending before the Court is Plaintiff's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Plaintiff filed her complaint on July 16, 2007, and her opening brief on May 19, 2008.[1] (Docs. 1, 14). The Commissioner filed his opposition to the appeal on June 19, 2008. (Doc. 19). Plaintiff did not reply to the Commissioner's opposition brief. (See Dkt. Report).

Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated August 28, 2007, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 7).

## JURISDICTION

On January 26, 2005, Plaintiff protectively filed for DIB and, on April 8, 2005, she filed her

---

[1] Upon notification that the Commissioner did not object, the Court granted Plaintiff's request to correct minor, non-substantive misstatements in her opening brief. (See Docs. 15, 17, 18).

application for DIB, alleging an onset date of July 1, 2000.  (Administrative Record ("AR") 55-58).
Plaintiff's application was denied initially and on reconsideration.  (AR 30-31, 40-44).  After timely
requesting a hearing, Plaintiff and her counsel appeared before Administrative Law Judge ("ALJ")
William Thompson, Jr., on July 25, 2006.  (AR 45, 228-258).  On November 16, 2006, the ALJ
issued a written decision finding that Plaintiff was not disabled.  (AR 20-29).  The Appeals Council
denied Plaintiff's request for review on May 18, 2007.  (AR 5-7).  The Appeals Council's decision,
therefore, became the final decision of the Commissioner, which is appealable to the district court
pursuant to 42 U.S.C. § 405(g).

The initiation of an appeal in the district court must be commenced within sixty (60) days of
the Appeal Council's decision.  42 U.S.C. § 405(g).  On July 16, 2007, Plaintiff timely filed her
complaint.  (Doc. 1).

## STATEMENT OF FACTS

The relevant facts have been presented in the administrative hearing transcript, the ALJ's
decision, and the Plaintiff's and the Commissioner's briefs, and only will be summarized here.  To
the extent necessary, additional facts will be addressed in this Court's analysis.

At the July 25, 2006, hearing, Plaintiff testified that she was born in January 1948, making
her 58 years old at the time of the ALJ's decision, and graduated from high school.  (AR 20-29, 233).
Plaintiff lives with her retired husband, and his pension and Social Security retirement benefits are
their sole source of income.  (AR 234).

Regarding her employment history, Plaintiff testified that she worked as a waitress on-and-of
until approximately 2001, although, as the ALJ noted, she alleged an onset date of July 1, 2000, she
had earnings in both 2001 and 2002.  (AR 234, 253-254).  Plaintiff explained that she stopped
working because she suddenly began to suffer severe pain, primarily on the left side of her head and
over her eye, which continues down to her shoulder blade.  (AR 236).  She further stated that the
pain generally affects her neck, jaw, and, more commonly, her left eye.  (AR 241-242).  Plaintiff's
headaches last a few days or for weeks.  (AR 243-244).  She has seen various doctors who used
different methods to alleviate her pain, including several medications, but because she is a
recovering alcoholic, she did not want to take addictive medications, even when they relieved the

1  pain.  (AR 236-239, 247, 252).  One of the doctors diagnosed her as suffering from torticollis.[2]

2  (AR 238).

3      Plaintiff testified that she spends the day cleaning the house, although not as well as in the

4  past, reading, and watching the television.  (AR 245).  She can sweep, but can only vacuum for ten-

5  to-fifteen minutes, after which her body aches for two days.  (AR 240-241, 249).  Additionally,

6  Plaintiff washes the dishes and fills the dishwasher, but she does not cook or shop for groceries.

7  (AR 242-244).  When Plaintiff does not have a headache, she occasionally drives to a nearby store

8  and attends church or visits friends.  (Id.).

9      With respect to her abilities and limitations, Plaintiff testified that one of her doctors told her

10  not to lift her head for any length of time or to bend over.  (AR 240, 249).  Plaintiff further testified

11  that, due to her sciatica, she can walk only fifty yards.  (AR 245-246).  She cannot stand very long,

12  but can sit for at least one-half hour, and longer if she does not have a headache.  (AR 246-247).  In

13  response to a question posed by her attorney, Plaintiff testified that she had problems remembering

14  what she was doing, which adversely affected her ability to function.  (AR 250).

15      Vocational expert ("VE") Susan Moranda then testified regarding the classification of

16  waitress work, stating that such a job generally is deemed light exertion and a lower-level,

17  semiskilled position.  (AR 256).  Neither the ALJ or Plaintiff's attorney wanted to question the VE

18  further, and, therefore, the hearing ended.  (AR 256-257).

19                          **RELEVANT LEGAL FRAMEWORK**

20      The Act defines "disability" as the inability to engage in any substantial gainful activity

21  by reason of any medically determinable physical or mental impairment which can be expected to

22  result in death or which has lasted or can e expected to last for a continuous period of not less than

23  twelve months."  42 U.S.C. § 423(d)(1)(A).  The Act also provides that a claimant shall be

24  determined to be under a disability only if his impairments are of such severity that he is not only

25  unable to do his previous work but cannot, considering his age, education, and work experience,

26

27      [2]  Torticollis is a shortening or contraction of the neck muscles, causing the head to be drawn to one side.
   STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

28

1  engage in any other kind of substantial gainful work which exists in the national economy.

2  42 U.S.C. § 423(d)(2)(A).

3  **Standard of Review**

4  Congress has provided a limited scope of judicial review of a Commissioner's decision.

5  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision to deny benefits, made

6  through an ALJ, when the decision is based on the proper legal standards and is supported by

7  substantial evidence.  Webb v. Barnhart, 433 F. 3d 683, 686 (9th Cir. 2005).  Substantial evidence

8  is more than a mere scintilla but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599,

9  601-602 (9th Cir. 1989) (quotations omitted).  It is "such relevant evidence as a reasonable mind

10 might accept as adequate to support a conclusion."  Webb, 433 F.3d at 686 (citing Richardson v.

11 Perales, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971)).  On review, the court considers the record as a

12 whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan,

13 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted); see Orn v. Astrue, 495 F.3d 625,

14 630 (9th Cir. 2007) (summarizing standard of review in Social Security cases).

15 It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  Richardson,

16 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the Court must

17 uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Moreover, if

18 there is substantial evidence to support the administrative findings, or if there is conflicting evidence

19 that would support a finding of either disability or non-disability, the Commissioner's decision is

20 conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  Nevertheless, a decision

21 supported by substantial evidence will be set aside if the proper legal standards were not applied in

22 weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human

23 Services, 839 F.2d 432, 433 (9th Cir. 1987).

24 **Sequential Evaluation Process**

25 The Commissioner has established a five-step sequential evaluation process for determining

26 whether a claimant is disabled.  20 C.F.R. § 404.1520.  Step one determines if the claimant is

27 engaged in substantial gainful activities.  If he is, then benefits are denied.  20 C.F.R. § 404.1520(b).

28 If he is not, the decision maker proceeds to step two, and determines whether the claimant has a

medically severe impairment or combination of impairments, i.e., impairments that significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the claimant does have a severe impairment or combination of impairments, the evaluation proceeds to the third step, where the decision maker compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P App 1.  If the claimant's impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling , the evaluation proceeds to the fourth step.

At the fourth step of the process, the decision maker determines whether the claimant's impairment or combination of impairments prevents the claimant from doing work that he has performed in the past. However, between steps three and four, "the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F. 3d 1149, 1151 n. 2 (9th Cir. 2007)(citing 20 C.F.R. § 416.920(e); 20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he is not disabled. 20 C.F. R. § 404.1520(f).  If the claimant cannot perform his past relevant work, the evaluation proceeds to the fifth step.

At the fifth and final step of the process, the ALJ determines whether the claimant is able to perform other work in the national economy in view of the claimant's age, education, residual functional capacity ("RFC") , and work experience.  20 C.F.R. 404.1520(g);  See Bowen v. Yuckert, 482 U.S. 137, 144, 107 S. Ct. 2287 (1987).

The claimant has the burden of proof to establish that he is entitled to benefits under the Act. Rhinehart v.Finch, 438 F. 2d 920, 921 (9th Cir. 1971)(citations omitted).  With respect to the five-step sequential evaluation process, the Ninth Circuit has held that "[t]he Claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five." Bustamante v. Massanari, 262 F. 3d 949, 954 (9th Cir. 2001)(citations omitted).  However, the ALJ also "has an affirmative duty to assist the claimant in developing the record at every step of the

1  inquiry."  Bustamante, 262 F. 3d at 954 (citing Tackett v. Apfel, 180 F. 3d 1094, 1098 n. 3 (9th Cir.

2  1999)).

3      The claimant's initial burden is met once he establishes that a physical or mental impairment

4  prevents him from engaging in his previous occupation.  The burden then shifts to the Commissioner

5  to show that the claimant can perform other substantial gainful activity and that a "significant

6  number of jobs exist in the national economy" which the claimant can perform.  Kail v. Heckler, 722

7  F. 2d 1496, 1498 (9th Cir. 1984).

8                                **ADMINISTRATIVE FINDINGS**

9      As an initial matter, the ALJ noted that, for purposes of DIB, Plaintiff had acquired enough

10  quarters of coverage to be insured through December 31, 2002, which was her date last insured

11  ("DLI").[3]  (AR 23, 25; see also AR 69, 232).  ALJ Thompson then discussed whether Plaintiff

12  qualified as disabled from her alleged onset date of July 1, 2000 through December 31, 2002 (the

13  "relevant period").  (AR 25-29).

14      The ALJ found at step one that Plaintiff was not engaged in substantial gainful activity during

15  the relevant period.  (AR 25).  At steps two and three, the ALJ determined that, through her DLI,

16  Plaintiff suffered headaches, degenerative disc disease, and torticollis, which were severe but did not,

17  alone or in combination, meet or equal any of the impairments listed in 20 C.F.R. §404  Subpt. P

18  App. 1.  (Id.).

19      The ALJ addressed Plaintiff's medical records and the medical opinions for the relevant two-

20  year period, as well as those before and after December 31, 2002.  (AR 25-28).  With respect to

21  Plaintiff's headaches, ALJ Thompson stated that the records showed that, after Plaintiff  complained

22  of headaches in September 1999, she underwent an MRI of the cervical spine which revealed

23  _____

24      [3]  In order to qualify for disability benefits under Title II, a claimant must have "insured status."  42 U.S.C. § 423(a)
and (c).  As set forth in the regulations, "insured status is a basic factor in determining [entitlement to] disability insurance

25  benefits."  20 C.F.R. § 404.101(a).  Insured status under Title II is measured in terms of quarters of coverage ("QC").  20
C.F.R. § 404.110(a).  QCs, in turn, are accumulated based upon a worker's earnings over time.  In general, workers "are

26  credited with Qcs based on the wages . . . paid and the self-employment income [derived] during certain periods."  20 C.F.R.
§ 404.101(b).  To be eligible for disability insurance benefits under Title II, a worker must have earned a sufficient number

27  of QCs within a rolling forty quarter period.  20 C.F.R. § 404.130(b)(2).  Under most circumstances, the claimant must have
a minimum of twenty quarters of coverage.  Id.  This requirement for disability insured status commonly is referred to as the

28  "currently insured" or "special insured" status requirement and has been known as the "20/40" requirement.  The termination
of a claimant's insured status is frequently referred to as the "date last insured" or "DLI."

1  moderate degenerative disc disease ("DDD") and minimal compression of the spinal cord without

2  significant, related problems.  (AR 25).  The ALJ noted that the results indicated that Plaintiff also

3  suffered from headaches of unknown origin in 1999.  (Id.).  In addition, Plaintiff underwent a CT

4  scan of her sinuses in November 1999 that was negative for sinusitis.  (Id.).  An x-ray and CT scan in

5  August 2000 again evidenced cervical DDD and clear sinuses, respectively.  (Id.).  Plaintiff

6  complained of persistent left facial numbness and, in October 2000, underwent an MRI of her brain,

7  which was negative.  (AR 25, 26).  In November 2000, claimant was given an injection due to

8  "some" left temporomandibular joint syndrome. ("TMJ").  (AR 26)(quotations in original).

9       ALJ Thompson subsequently discussed Plaintiff's medications and their effects as reported

10  by Plaintiff, from January 2001 through September 2002.  (AR 26).  In February 2001, the ALJ

11  stated that a combination of Methadone, Celebrex, Flexeril, and Vicodin reduced Plaintiff's pain to

12  three on a ten-point scale, and down to a two after Plaintiff received an occipital nerve block

13  injection.  (Id.).  The next month Plaintiff's physician, believing that Plaintiff could be having

14  rebound headaches, warned her against taking Vicodin or Fioricet on a daily basis.  (Id.).  ALJ

15  Thompson noted that, except for prescriptions for psychotropic medication in March 2001, the

16  record contains no additional medical records until May 2002.  (Id.).

17       The ALJ then provided a summary of Plaintiff's post-DLI medical treatment, noting that her

18  next report was in September 2003, when she reported an increased dose of Celebrex, switched from

19  MS Contin back to Methadone, and reported feeling light-headed.  (AR 26).  Plaintiff's physician

20  instructed her to stop taking an anti-inflammatory medication and to avoid alcohol, tobacco, and

21  coffee.  (Id)  In September 2004, Plaintiff again saw her physician, who diagnosed chronic pain

22  syndrome involving the neck, shoulder, and headache.  (Id.).  The physician's notes indicated that

23  there was an acute change in Plaintiff's headache and neck/face pain, and diagnosed her with

24  torticollosis, ruling out TMJ.  (Id.).  The ALJ noted that "December 2004 notes state that she has

25  chronic headaches and depression.  (AR 26).  The medical records also reflect that Plaintiff

26  received Botox treatment, which was short-lived, and in August 2005, there were concerns about her

27  use and tolerance of ""opioid"" medications.  (Id.).  In June 2006, Plaintiff's physician, Kira

28  Stammler, M.D. provided, a disability letter for SSA.  (AR 199).

1      As to Plaintiff's psychological state, the ALJ reported that March 2001 medical treatment

2   records indicate that Plaintiff was taking Wellbutrin and Celexa for depression.  (AR 26).  According

3   to the ALJ, Plaintiff's physician advised her to take one of her husband's nerve pills when she had

4   anxiety episodes related to traffic congestion.  (Id.).  As of June 2006, Plaintiff stopped taking

5   Wellbutrin and informed her doctor that she was having problems with depression and crying.  (Id.).

6      After discussing the medical records, the ALJ stated that he gave little weight to the June

7   2006 disability letter provided by Dr. Stammler.  (AR 27).  According to the ALJ, Dr. Stammler

8   opined that Plaintiff was unable to keep a steady job due to chronic headaches and neck pain.  (Id.).

9   ALJ Thompson's reasons for discounting Dr. Stammler's opinion included that it was inconsistent

10  with the medical records, including the diagnostic tests; it appeared to be based on Plaintiff's

11  subjective complaints; and it provided no evidence that Plaintiff suffered the disabling impairments

12  before Plaintiff's DLI.  (Id.).

13     ALJ Thompson also discounted the opinion of examining consulting psychologist Les

14  Kalman, Psy.D., who saw Plaintiff in July 2006.  (AR 27).  Dr. Kalman opined that Plaintiff suffered

15  depression as a result of her physical impairments.  (Id.).  The ALJ found that Dr. Kalman's opinion,

16  with its concomitant limitations on Plaintiff's ability to understand and carry out detailed

17  instructions, concentrate, and, in general, engage in the requisite activities expected to complete a

18  workday, were inconsistent with his own report and the medical documents as a whole.  (Id.).  ALJ

19  Thompson found that Dr. Kalman presented no evidence to support his conclusion that Plaintiff  was

20  disabled prior to her DLI, and the ALJ found that Dr. Kalman's opinion primarily was based on

21  Plaintiff's subjective complaints.  (Id.).  The ALJ also noted that both Drs. Stammler and Kalman

22  appeared to be advocates for Plaintiff.  (Id.).

23     The ALJ noted that, in October 2005, a state agency physician reported that there was

24  insufficient evidence in the record to evaluate Plaintiff's eligibility for DIB prior to her DLI.

25  (AR 26).  The state agency physician also reported that Plaintiff's records indicated cervical DDD,

26  occipital neuralgia/headaches, and that she had no new examinations since her DLI.  (Id.).

27     The ALJ concluded that in light of discrepancies between the objective data and Plaintiff's

28  subjective complaints, Plaintiff's testimony was not credible as to the limitations she asserted or

1   under Social Security Ruling ("SSR") 96-7p.  (AR 25-28).  ALJ Thompson determined that, as of

2   December 31, 2002, Plaintiff retained the RFC to lift and carry ten pounds frequently and twenty

3   pounds occasionally, and could sit, stand, and/or walk for six hours in an eight hour workday.

4   (AR 29).  As to Plaintiff's mental limitations, the ALJ concluded that, prior to her DLI,  Plaintiff had

5   only mild difficulties in maintaining concentration, persistence, and pace, which caused, at most,

6   minimal impairments and did not amount to a severe impairment.  (AR 28).

7         Based on Plaintiff's RFC, and in accordance with the VE's testimony that waitress work

8   constituted a light, semi-skilled work, which was consistent with the Dictionary of Occupation

9   Titles, ALJ Thompson concluded, at step four, that Plaintiff was able to return to her past relevant

10   work as of her DLI.  (AR 29).  Accordingly, the ALJ found that Plaintiff was not disabled during the

11   relevant period.  (Id.).

12                                                **ISSUES**

13         In her opening brief, Plaintiff asserts that the Commissioner erred as a matter of law, and that

14   his decision was not supported by substantial medical evidence.  (Doc. 14).  Plaintiff raises the

15   following four issues for consideration:

16         1.  The ALJ erred when he found that Plaintiff's depression did not constitute a severe

17   impairment prior to December 31, 2002;

18         2.  The ALJ erred when he failed to obtain a medical expert's opinion regarding Plaintiff's

19   disability onset date and RFC;

20         3.  The ALJ improperly concluded that Plaintiff could return to her past relevant work; and

21         4.  The ALJ erroneously found that Plaintiff's testimony was not credible.

22                                             **DISCUSSION**

23         1.  Whether the ALJ erred when he found that Plaintiff's depression did not constitute a

24   severe impairment prior to December 31, 2002

25         Plaintiff contends that the ALJ erred when he found that Plaintiff did not suffer from a severe

26   mental impairment prior to her DLI.  The Commissioner argues that the ALJ did not err.

27         At step two of the sequential evaluation process, the ALJ is required to determine whether the

28   claimant has a severe, medically determinable physical or mental impairment or combination of

1  impairments, that meets the 12-month duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), (c),

2  416.920; SSR 96-3p; Bowen, 482 U.S. at 146 n. 5.  An impairment is severe if it "significantly limits

3  [the claimant's] physical or mental ability to do basic work activities."  Yuckert, 482U.S. at  154

4   n.11.

5          An impairment is not severe "if it is merely 'a slight' abnormality (or combination of slight

6  abnormalities) that has no more than a minimal effect on the ability to do basic work activities."

7  Webb, 433 F. 3d at 686.   A mental impairment likewise is not severe if the degree of a claimant's

8  limitation in the functional areas of daily living, social functioning, and concentration, persistence or

9  pace, is rated as "none" or "mild" and there are no episodes of decompensation, unless the evidence

10 otherwise indicates that there is more than a minimal limitation in his ability to do basic work

11 activities.  20 C.F.R. § 404.1520a(d)(1). "Basic work activities" means the "abilities and aptitudes

12 necessary to do most jobs."  20 C.F. R. §§ 404.1521(b), 416.921(b).  Examples of basic work

13 activities include:

14          (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,
            reaching, carrying, or handling;
15          (2) Capacities for seeing, hearing, and speaking;
            (3) Understanding, carrying out, and remembering simple instructions;
16          (4) Use of judgment;
            (5) Responding appropriately to supervision, co-workers and usual work situations;
17          and
            (6) Dealing with changes in a routine work setting.
18
    20 C.F.R. § 404.1521(b).
19
            To establish a medical impairment at step two, Plaintiff must provide medical evidence
20
    consisting of symptoms, signs, and laboratory findings.  20 C.F.R. § 416.920.  The term "symptoms"
21
    means the claimant's own description of his physical or mental impairment. 20 C.F.R. § 416.928(a).
22
    The term "signs" means "anatomical, physiological, or psychological abnormalities which can be
23
    observed, apart from a claimant's statements."  20 C.F.R. § 416.928(b).  Psychological signs include
24
    "medically demonstrable phenomenon that indicate specific psychological abnormalities, e.g.,
25
    abnormalities of behavior, mood, thought, memory, orientation, development, or perception."  Id.
26
    Psychological signs must be shown by observable facts that can be medically described and
27
    evaluated.  Id.  The term "laboratory findings" means "anatomical, physiological, or psychological
28

phenomena which can be shown by the use of a medically acceptable laboratory technique,"

including chemical tests, electrophysiological studies, x-rays, and psychological tests.  20 C.F.R.

§ 416.928(c).

The effects of all of the claimant's symptoms must be evaluated in the context of a medically

determinable impairment that may cause the symptoms.  20 C.F.R. § 416.929.  In addition, "the ALJ

must consider the combined effect of all of the claimant's impairments on her ability to function,

without regard to whether each one was sufficiently severe." Smolen, 80 F. 3d at 1290.

A.  Step two finding

The ALJ found that Plaintiff suffered from three severe impairments, including headaches.

The ALJ found that prior to Plaintiff's DLI, Plaintiff had no restrictions of the activities of daily

living, no difficulties in maintaining social functioning; mild difficulties in maintaining

concentration, persistence, or pace; and no history of any episodes of decompensation.  (AR 28).

The ALJ also found that Plaintiff's mental impairments caused only minimal, if any, limitations prior

to her DLI, and on that basis concluded that she did not have a severe mental impairment prior to her

DLI. (Id.).

B.  Physicians' opinions

Generally, the opinion of a treating physician is entitled to greater weight than the opinion of

another physician, and the opinion of a treating or examining physician is entitled to more weight

than the opinion of a non-examining physician.  Benecke v. Barnhart, 379 F.3d 587, 592 (9th Cir.

2004);  Batson v. Commissioner of Social Security, 359 F. 3d 1190, 1195 (9th Cir. 2004).  When the

opinion of a treating or examining physician is not contradicted by another physician, it can be

rejected only for "clear and convincing" reasons that are based on substantial evidence in the record.

Orn, 495 F. 3d at 631.  The ALJ may provide clear and convincing reasons by making a detailed and

thorough summary of the facts and conflicting clinical evidence, stating the ALJ's interpretation

thereof, and making the ALJ's  findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).

The ALJ must do more than offer conclusions.  The ALJ must set forth his or her own interpretations

and explain why they, rather than the physician's, are correct.  Embrey v. Bowen, 849 F.2d 418,

421-422 (9th Cir.1988).

Here, Plaintiff produced the opinions of Drs. Stammler and Kalman.  Dr. Stammler diagnosed Plaintiff as suffering from chronic headaches and neck pain, and treated her for headaches, depression, and other ailments before and after her DLI.   Dr. Kalman opined that Plaintiff suffered headaches and chronic depression, that the depression was caused by the headaches, and that both impairments had caused moderate limitations in Plaintiff's ability to do basic work activities since prior to her DLI.  Plaintiff's medical records also included the assessments of two State agency physicians.  However, those assessments failed to consider Plaintiff's medical condition prior to her DLI, except for a comment by Corazon C. David, M.D. stating that: "[it] appears to me that we have insufficient evidence to assess whether [claimant] was disabled prior to her DLI." (AR 176).

Dr. Kalman reviewed Plaintiff's medical records from 1999 to 2006 and examined her in July 2006.  Dr. Kalman diagnosed Plaintiff as suffering from "Adjustment Disorder, depressed, chronic, secondary to general medical conditions Rule Out Cognitive Disorder, not otherwise specified" and a GAF score of 50.  (AR 220).  The GAF score is a subjective determination based on a scale of 100 to 1 of the clinician's  judgment of an individual's overall level of functioning.  A score of 50 indicates "[serious symptoms ... [or] serious impairment in social, occupational, or school functioning." [4]

In a medical source statement dated July 20, 2006 provided with Dr. Kalman's written report, Dr. Kalman reported that Plaintiff had moderate limitations in understanding and memory, sustained concentration and persistence, and adaptation.  He concluded that she was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, complete a normal workday and workweek without  interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number of interruptions.  Dr. Kalman also concluded that Plaintiff was moderately limited in the ability to travel to unfamiliar places and/or use public transportation, and in the ability to set realistic goal or to make plans independent of others. Dr. Kalman further concluded that routine, repetitive,

---

[4]American Psychological Association, Diagnostic and Statistical Manual of Mental Disorders  (4th ed. 2000) at 32.

1
2
3
4
5
simple, entry-level jobs would serve as a stressor which would exacerbate Plaintiff's psychological problems in the workplace, and that her impairments were sufficiently severe that she would be unable  complete a workday more than three or four times a month. Dr. Kalman also concluded that Plaintiff's limitations lasted or could be expected to last 12 continuous months, and that her limitations have existed since 2000.

6
7
8
9
10
The ALJ gave "little weight" to the opinions of Drs. Stammler and Kalman, and found that Plaintiff had only mild difficulties in maintaining concentration, persistence, or pace, and her mental impairments caused only minimal, if any, limitations prior to her DLI.  By giving "little weight" to the opinions of Drs. Stammler and Kalman and by disregarding them and making contrary findings, the ALJ effectively rejected the opinions of the treating and examining physicians.

11
C.  The ALJ's reasons for rejecting Dr. Kalman's opinion

12
13
14
15
16
17
18
19
The ALJ provided seven reasons for rejecting Dr. Kalman's opinion.[5]  The first reason he gave was that Dr. Kalman's opinion was "not consistent with the medical record as a whole or with objective evidence in the doctor's own examination notes."  (AR 27).  The ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Kalman's opinion and either the medical records as a whole or the examination notes, that caused him to reject Dr. Kalman's opinion. While the Court surmises that the ALJ may be relying in part on the results of the MRI and CT scans taken in 1999 and 2000 for his view that Dr. Kalman's opinion is not consistent with the medical record as a whole,  the Court cannot be certain of it because the ALJ provided no explanation.

20
21
22
23
24
25
26
Contrary to the ALJ's finding, Dr. Kalman's opinion is consistent with his examination notes. Dr. Kalman's notes includes psychological signs.  For example, on mental status examination, Dr. Kalman observed that Plaintiff's speech was a slow monotone, her abstractions were not intact,  she exhibited poor insight into her mental illness and her judgment, her mood was depressed and her affect was blunted, and her neuro vegetative signs included "greatly diminished energy level, hypersomnia." (AR 219, 200). These psychological signs, as well as the findings noted on the medical source statement, are consistent with Dr. Kalman's opinion.

27
28

---

[5]Plaintiff did not address the ALJ's rejection of Dr. Stammler's June 2006 letter.

The second reason the ALJ gave for rejecting Dr. Kalman's opinion was the lack of evidence that Plaintiff had been referred to a mental health professional prior to her DLI, which he found to be inconsistent with the "the level of incapacity due to mental impairments that the doctor alleges in this matter." (AR 27).   The ALJ's finding on this issue appears to ignore the medical records evidencing that Plaintiff was treated for depression with anti-depressant medication as early as 1999.  The fact that Plaintiff's treating physicians did not also refer her to a therapist or other mental health professional may be relevant to the degree of Plaintiff's depression, but it is not a persuasive reason to reject the examining psychiatrist's opinion when the records show that Plaintiff was being treated for depression.  See Regennitter v. Commissioner of Soc. Sec. Adminin,  166 F. 3d 1294, 1299 (9th Cir. 1999).

The third reason the ALJ gave for rejecting Dr. Kalman's opinion was that it is the retrospective opinion of a nontreating physician.   Medical evaluations made after a claimant's insured status has expired are relevant to an evaluation of the claimant's pre-expiration condition. Smith v. Bowen, 849 F. 2d 1222, 1225 (9th Cir. 1988)(citations omitted).  The fact that Dr. Kalman's opinion was retrospective in nature is not a sufficient reason to reject it.

The fourth reason the ALJ gave for rejecting Dr. Kalman's opinion was that Dr. Kalman did not cite specific evidence from Plaintiff's treatment records.  Dr. Kalman's report states that according to Plaintiff's medical records, she was "diagnosed with degenerative disc disease, cervical region, chronic headaches of unknown etiology," and it includes the following records as source medical documents:  Plaintiff's 1999 records from Northern California Spine & Rehabilitation, medical records from U.C. Davis Medical Center from January to June 2001, medical records from Lodi Primary Care Medical Center from 2000 to 2005,  Dr. Stammler's June 27, 2006 report, medical records from Morris A. Balfour, M.D. from 1999-2000, and the Burns Anxiety Inventory/Burns Depression Checklist.  (AR 218-226).  Dr. Kalman's written evaluation identifies the medical records that he reviewed and indicates that he considered them in their entirety as a factor to facilitate his clinical examination of Plaintiff.  There is no evidence that Dr. Kalman did not review Plaintiff's medical records.  The fact that Dr. Kalman did not cite to specific pages in the

medical records does not support a finding he did not review them, and more significantly, is not a convincing reason to reject his opinion.

The fifth reason the ALJ gave for rejecting Dr. Kalman's opinion was that "there is absolutely no objective evidence in the record to support the doctor's opinion that the claimant has had these restrictions since '2000'." (AR 27).  This is not supported by the evidence.  The medical notes of Andrew J. Limb, M.D., contain objective findings regarding Plaintiff's TMJ and headache pain in 2000.  Dr. Limb's notes report that on November 2, 2000, he injected Kenalog and Lidocaine into Plaintiff's left TMJ after an August 2000 CT scan revealed that Plaintiff's "turbinates were markedly edamatous compared to a CT scan done in 1998" and she had a "persistent right septal deviation" and "some obstruction of the left osteomeatal complex." (AR 193-194, 198).  On November 9, 2000, Dr. Limb noted that Plaintiff still had  "some persistent left retroorbital and left frontal headache." (AR 192, 193, 198).

The sixth reason the ALJ gave for rejecting Dr. Kalman's opinion was that "on the whole, the doctor appears to have accepted the claimant's subjective complaints, and [Dr. Kalman's] opinion appears reflective of a position of 'advocate' for the patient." (AR 27).   The ALJ failed to explain or identify what evidence he relied upon for this finding. Nothing in Dr. Kalman's report indicates that he relied exclusively on Plaintiff's subjective complaints or that his report was an act of advocacy or courtesy.

The seventh reason the ALJ gave for rejecting Dr. Kalman's opinion was that "[f]inally, the issue of whether a claimant is "disabled" is reserved to the Commissioner."  It is correct that the Commissioner, through the ALJ, decides the issue of disability.  However, the ALJ is nevertheless obliged to review all of the medical findings and other evidence that support the statement of a medical source such as Dr. Kalman, that a claimant is disabled.  20 C.F.R.§§404.1513, 16.927(e)(1).

D.   The ALJ erroneously rejected Dr. Kalman's opinion

The ALJ's step two finding is predicated upon his rejection of Dr. Kalman's opinion. Because the ALJ failed to explain or identify what the claimed inconsistencies were between the opinions of Drs. Kalman and the other substantial evidence in the record, his reasons for rejecting

those opinions are not sufficiently specific to enable this Court to meaningfully review his findings. Without further clarification from the ALJ on remand, the reasons the ALJ gave for rejecting Dr. Kalman's opinion are not clear or convincing, and are not supported by substantial evidence.  It was improper for the ALJ to reject Dr.  Kalman's opinion based upon the ALJ's speculative and unsupported conclusion that he was acting as an advocate.

Based on the foregoing, the Court concludes that the ALJ did not follow the correct legal standards in considering Dr. Kalman's opinion, and that absent clarification from the ALJ on remand, the reasons he gave for rejecting the opinion is not supported by the substantial evidence in the record and are not sufficiently specific to allow meaningful review.  For this reason, there is not substantial evidence to support the ALJ's determination that Plaintiff's depression did not constitute a severe mental impairment prior to December 31, 2002.

2.  Whether the ALJ erred when he failed to obtain a medical expert's opinion.

Plaintiff contends that the ALJ erred by failing to call a medical expert to testify about the onset date of Plaintiff's alleged disability and her RFC prior to her DLI.  The Commissioner contends that the ALJ had no obligation to call a medical expert to establish the onset date because Plaintiff failed to prove she was disabled prior to her DLI.

In order to obtain disability benefits, "[a claimant] must demonstrate that he was disabled prior to his last insured date."  Morgan v. Sullivan, 945 F. 2d 1079, 1080 (9th Cir. 1991).  The claimant "must prove that he was 'either permanently disabled or subject to a condition which became so severe as to disable [him] prior to the date upon which [his] disability insured status expire[d].'"  Armstrong v. Commissioner of the Social Security Administration, 160 F. 3d 587, 589 (9th Cir. 1998)(quoting Johnson v. Shalala, 60 F. 3d 1428, 1432 (9th Cir. 1995)).

While the claimant has the burden of proving her disability, the ALJ has a duty "to assist in developing the record."  Armstrong, 160 F. 3d at 589.  The ALJ's duty includes ensuring that the disability onset date is supported by the evidence.  See SSR 83-20.  When the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and obtain all evidence

which is available to make the determination." Armstrong, 160 F. 3d at 590 (quoting DeLorme v. Sullivan, 924 F. 2d 841, 848 (9th Cir. 1991)).  Thus, an ALJ must call a medical expert if the record is ambiguous regarding the onset date of the claimant's disability.  Armstrong, 160 F. 3d at 589-590; SSR 83-20.

In Armstrong, the Ninth Circuit rejected the argument made by the Commissioner in this case, i.e., that the ALJ does not have to call a medical expert because the claimant did not prove that he was disabled prior to his date last insured.  Armstrong, 160 F. 3d at 590.  In doing so, the Ninth Circuit reasoned that the claimant's burden to prove that he was disabled prior to his date last insured does not relieve the ALJ of his or her obligation under SSR 83-20 to call on the services of a medical advisor if the record is ambiguous regarding the onset date.

In this case, the evidence is ambiguous as to when Plaintiff's condition became disabling. The only State agency RFC assessment reports are post-DLI, and state that "we have insufficient evidence to assess whether [claimant] was disabled to her DLI."  (AR 176).  The ALJ rejected the opinions of Drs. Kalman and Stammler.  The medical records establish that Plaintiff suffered chronic headaches before and after her DLI, and obtained treatment for headaches and depression on a relatively consistent basis before and after her DLI.  When, as in this case, the medical evidence does not indicate a definite onset date, and determination of the onset date requires medical inferences, the ALJ is required to obtain the services of a medial advisor.

The Court concludes that the ALJ erred by failing to retain a medical advisor to determine an onset date.  A remand for further administrative proceedings is necessary to allow the ALJ to obtain the services of a medical advisor. See Smolen, 80 F. 3d at 1292.

3.  Whether the ALJ improperly concluded that Plaintiff could return to her past relevant work

Plaintiff contends that the ALJ improperly concluded that Plaintiff could perform her past relevant work as a waitress.  The Court agrees.

When a claimant's impairment does not initially qualify for disability, the ALJ must assess and make findings about the claimant's RFC and determine whether the claimant can perform the

claimant's past relevant work.  20 C.F.R.  § 404.1520(e).  To accomplish this, the ALJ must compare the claimant's RFC to the physical and mental demands of the claimant's past relevant work, and is required to fully develop the record and explain whether and why the claimant retains the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f); SSR 82-62.  The ALJ's decision must include specific findings of fact regarding the claimant's RFC, the physical and mental demands of the claimant's past work, and whether the claimant's RFC would permit a return to the claimant's past job or occupation.  Id.   Where the claim includes a mental impairment, such as depression,  the ALJ must obtain "a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine whether the claimant's mental impairment is compatible with the performance of such work." Id.

Here, the ALJ found that Plaintiff retained the RFC to perform light work, and that her RFC would allow her to perform her past relevant job as a waitress.  These findings are based upon an erroneous characterization of the VE's testimony, and appear to have been made without a complete analysis of Plaintiff's past work duties and her ability to perform them.  As the basis for these findings, the ALJ's decision states that "[t]he vocational expert testified that a person with claimant's residual functional capacity and vocational background (prior to her date last insured) could perform the claimant's past relevant work as a waitress." (AR 29)  However, the VE's testimony was limited responding to a single question requesting that she classify work as a waitress; it did not address Plaintiff's ability to perform that work based upon Plaintiff's RFC or vocational background. (AR 256).

The ALJ's finding regarding Plaintiff's ability to work also appears to be premised upon an incomplete assessment of Plaintiff's past work duties and her ability to perform them.  The ALJ's decision states that "[i]n comparing the residual functioning capacity the claimant had as of the date last insured with the physical and mental demands of this work, I find that the claimant was able to perform it as it was actually performed and as generally performed in the national economy."  (AR 29).  However, the decision does not include any findings of fact regarding the physical and mental requirements of Plaintiff's past work, whether there are any job duties that can produce tension and

anxiety, and whether Plaintiff can perform those duties given her physical and mental impairments. Although the decision infers that the ALJ compared Plaintiff's RFC on her DLI "with the physical and mental demand of this work," it does not explain how the ALJ made that comparison or what evidence he used to do so, and there is nothing in the record to fill in that analytical gap.

The record in this case is not a fully developed record that explains whether Plaintiff has the RFC to perform past relevant work and that takes into account the mental and physical requirements of that work. A remand is required to allow the ALJ to fully develop the record. On remand, and before determining whether Plaintiff has established that she cannot perform her past relevant work, the ALJ should make complete factual findings as to whether a person with Plaintiff's RFC prior to her DLI could perform Plaintiff's past relevant work, the mental and physical requirements of such work, including a description of the job duties that could produce tension and anxiety, and whether Plaintiff can perform those duties given her physical and mental impairments.

4.  Whether the ALJ erroneously found that Claimant was not credible

The ALJ found that Plaintiff's allegations as to the intensity, persistence, and limiting effects of her subjective symptoms prior to her DLI were not wholly credible. Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's subjective complaints. The Commissioner contends that the ALJ's credibility assessment was proper.

When the record establishes the existence of a medically determinable impairment that could reasonably give rise to a claimant's reported symptoms, the ALJ is required to make credibility finding as to the claimant's subjective complaints. SSR 96-7p; Smolen, 80 F. 3d at 1282. Unless the ALJ finds that the claimant is malingering, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Smolen, 80 F. 3d at 1283-1284.

In this case, the record establishes the existence of degenerative disc disease, headaches, and torticollis as of Plaintiff's DLI, which could have given rise to Plaintiff's subjective complaints.[6] As a result, the ALJ was required to make a credibility finding as to Plaintiff's subjective complaints.

---

[6] The record also establishes that Plaintiff was treated for depression prior to her DLI.

1   Because there was no finding of malingering, the ALJ was required to provide clear and convincing

2   reasons in support of his credibility findings.

3       The ALJ provided two reasons for discounting Plaintiff's credibility. The first reason he

4   gave was that prior to Plaintiff's DLI, "there are discrepancies between the claimant's assertions and

5   the degree of medical treatment (including medications) she sought and obtained, the diagnostic tests

6   and findings upon examination, the level of restrictions on the claimant in the physician opinions of

7   record (for the relevant time period), and the level of follow-up treatment, including diagnostic

8   testing, ordered by the treating physicians." (AR 28).  The second reason the ALJ gave for

9   discounting Plaintiff's credibility was that "there is no indication in the record that the claimant was

10  referred for specific mental health treatment prior to her date last insured" and that "claimant does

11  not appear to have been referred for a course of physical therapy."  (AR 28).

12      In his discussion of Plaintiff's credibility, the ALJ does not identify what the discrepancies

13  were between Plaintiff's assertions and the treatment, examinations, or restrictions, that caused the

14  ALJ to discount Plaintiff's testimony.  The ALJ's statement regarding physical therapy appears

15  to ignore the evidence that Plaintiff underwent physical therapy, used a neck traction, performed

16  daily neck exercises, and obtained heat massages for pain.  As discussed supra, Plaintiff

17  obtained medical treatment before and after her DLI from numerous health care providers. This

18  resulted in objective clinical findings and diagnoses based on medical findings that explained at least

19  some of her subjective complaints. The Court concludes that the ALJ failed to provide clear and

20  convincing reasons for rejecting Plaintiff's subjective complaints.

## CONCLUSION AND ORDER

22      Based on the foregoing, the Court concludes that the ALJ's decision was not supported by

23  substantial evidence in the record and was not based upon on the proper legal standards.  In this case,

24  further development and clarification is necessary for a proper determination to be made.

25      Accordingly, the Court ORDERS that:

26      1.  Plaintiff's social security complaint is GRANTED, as set forth below;

27      2.  The matter is REMANDED pursuant to sentence four of 42 U.S.C.§ 405(g) for further

28  development of the record and further consideration consistent with this decision;

1      3.  On REMAND, the ALJ must (a) obtain the services of a medical advisor to determine

2   when Plaintiff became disabled and to assist in determining Plaintiff's residual functional capacity

3   during the relevant period; (b) determine whether Plaintiff suffered from depression during the

4   relevant period and if so, whether it constituted a severe mental impairment; (c) obtain new

5   vocational expert testimony to determine whether Plaintiff can perform work; (d) reassess

6   Dr. Kalman's opinion and Plaintiff's credibility after considering the entire record in light of the

7   additional evidence; (e) complete the sequential evaluation process, taking into account the

8   cumulative impact of Plaintiff's impairments upon her ability to work and fully developing the

9   record regarding Plaintiff's residual functional capacity; and (f) issue a new decision based on

10  substantial evidence and proper legal standards; and

11      4. The Clerk of Court is DIRECTED TO ENTER JUDGMENT for Plaintiff SHERRILL R.

12  HERBERT and against Defendant MICHAEL J. ASTRUE and close this case.

13

14  IT IS SO ORDERED.

15

16  Dated:   **September 30, 2008**                              **/s/ Theresa A. Goldner**

17  _____                                                UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28